[Civ. No. 19984. Second Dist., Div. Two. June 4, 1954.]

FRANK TAYLOR, INC., Respondent, v. J. J. BOMALICK et al., Appellants.

754

Joseph Shane, Frank Alef and Marvin M. Chesebro for Appellants.

Irving M. Walker, Mark Mullin and Robert A. Schlesinger for Respondent.

FOX, J.—In 1949 plaintiff leased certain business property, for the purpose of conducting an automobile business, from the Bomalicks for a five-year term. The lease contained the following provision: "2. Said Leasee shall pay as rent for said premises the sum of Seventy-Five Thousand Dollars ($75,000.00), as follows:

"$6,250.00 upon execution of this lease; $1,250.00 on April 1, 1949, and $1,250.00 on the 1st day of each and every month thereafter to and including October 1, 1953; and in the event this lease is in effect and the lessee is in possession of the demised premises, and not in default in the performance of any of the agreements herein contained on October 31, 1953, then Lessee shall not be required to pay any rent for the months commencing November 1, 1953, and ending February 28, 1954."

After plaintiff had been in possession for approximately a year the original lease was superseded by two leases. They were executed at the request of and for the convenience of the Bomalicks, so that they could arrange a loan on one of the parcels. Under the substituted leases, the property originally demised was divided into two parts and the rent referred to in the original lease was segregated between the two. No change was made in the total rent to be paid or in the dates of the substituted leases. The period and terms of the substituted leases were the same as those in the original lease, except that because of the segregation of the rent between the two leases, the amount initially paid was divided so that one substituted lease recited that the tenant had paid $6,000 against a monthly rental of $1,200, and the other recited that the tenant had paid $250 against a monthly rental of $50.

On September 27, 1951, plaintiff entered into an agreement with defendant Sanchez for the sale of its automobile business conducted on the demised premises. This agreement provides: that the sale was contingent upon the assignment of all the business' leases to Sanchez with the approval of the landlords; that Sanchez would, within a specified time, assume the obligations of plaintiff under the leases; that plaintiff would be relieved of all liability under the leases after October 1, 1951; and that upon the completion of these matters Sanchez would pay plaintiff the amount of any prepaid rent theretofore paid by plaintiff to its lessors.

An escrow was opened to facilitate the sale. Sanchez undertook to obtain the consent of the several lessors and

their release of plaintiff's obligations. All of the consents and releases were obtained except those to come from the Bomalicks. Sanchez reported Mr. Bomalick would not agree to release plaintiff, and that he would not enter into a lease such as those plaintiff had signed with the Bomalicks. As an alternative, Sanchez demanded a termination of the leases, and that plaintiff execute an agreement terminating them. Mr. Taylor, president of plaintiff, pointed out to Sanchez that a termination of the leases was contrary to their agreement to buy and sell and that he expected to receive the $5,000 prepaid rent. Sanchez then said to Taylor: "I will see you get your $5,000.00, and you don't have to worry about it." Thereupon the termination agreement (bearing date of September 30, 1951) was signed by Bomalick and Taylor.

On October 22d the escrow officer pointed out to Taylor and Sanchez that the assignment of the Bomalick leases was required under this agreement. Sanchez was willing to pay the $5,000 to plaintiff but only if he could be protected against paying it again to the Bomalicks under his new lease with them. Whereupon, pursuant to Sanchez's assurance that plaintiff would get the $5,000 from either Sanchez or Bomalick, Taylor signed a guaranty that Sanchez would "not be required to pay" plaintiff and Bomalick "rent for the same period." The escrow instructions were then modified to provide that the matter of prepaid rent would be settled out of escrow. Although the escrow was closed a few days later, Sanchez failed to pay plaintiff the $5,000.

Sanchez and Bomalick later executed a new lease. It did not provide any credit for prepaid rent. Bomalick, however, gave Sanchez an agreement on the side to the effect that if the court required Sanchez to pay the $5,000 to plaintiff, Bomalick would give him credit on the lease.

The trial court gave plaintiff judgment against Sanchez for $5,000 and further decreed that upon the satisfaction of that judgment, Bomalick must credit Sanchez with $5,000 as prepaid rent on the current lease. The Bomalicks and Sanchez appeal.

Defendants argue that "The judgment as well as the findings of fact and conclusions of law are not supported by the evidence and are contrary to law." These contentions are not well founded.

The court found that $5,000 out of the initial check of $6,250 which plaintiff gave Bomalick when the original lease was entered into was a prepayment of rent. Defendants

challenge the sufficiency of the evidence to support this finding. From the lease it appears that the rental is $1,250 per month; that if the lease is in effect and the lessee in possession and not in default on October 31, 1953, then the lessee is not required to pay any rent for November and December, 1953, and for January and February, 1954, when the lease expired. From this arises a reasonable inference in support of the finding, that the $5,000 was paid as rental for these four months.

Furthermore, Taylor testified that Bomalick explained during the course of the negotiations that the $6,250 was for "the first and the last four months of the lease." Mr. Woodman, general manager and secretary-treasurer of plaintiff, who was present when the terms of the lease were agreed upon, testified in effect that the rental was $1,250 a month, and that the lessee was required to pay the rental for the first month and the last four months of the term of the lease. Finally, plaintiff produced a cancelled check payable to and endorsed by Bomalick, dated March 15, 1949, in the sum of $6,250. The check included the voucher notation:

"Last 4 mo. lease ......................$5,000.00
March '49 ........................... 1,250.00
                                        ─────────
                                        6,250.00"

There is, therefore, abundant support, both from the terms of the original lease and the testimony of Taylor and Woodman and the check voucher, for the finding that the $5,000 was paid as prepaid rent when the lease was executed.

Defendants point out that the intention of the parties to a written agreement is to be ascertained from the writing alone, if possible. They then assert "it does not appear that the intention of the parties could not be ascertained from the writing itself" in the instant case. Hence, they argue, it was not proper to admit the parol evidence to which we have referred. It is true the lease is quite clear. It may well be that parol evidence was not necessary to determine its meaning. but that did not make it prejudicial.

Defendants assert that the notation on the cancelled check is without significance. They point out it was in the handwriting of Mr. Powers (who was plaintiff's office manager) and that Mr. Taylor did not recall having directed Powers to place the notation thereon. They argue from this fact that it does not appear that Powers was authorized by plaintiff

to act for it in placing the notation on the check. However, it is a reasonable inference that this check was drawn in the usual course of business and that Powers had implied authority to place the notation thereon and that it truly reflected the transaction as then understood by both plaintiff and Bomalick, in view of the fact that the latter endorsed the check and cashed it without raising any question relative to the notation. The notation is in harmony with the written lease, corroborates the testimony of Taylor and Woodman, and supports the court's finding as to the purpose for which the $5,000 was paid.

Defendants say "there was no evidence that the parties intended to modify the terms of the lease in any respect by this check" and that the notation "was not a part of the contractual relationship between the parties." Of course the parties did not intend to modify the terms of the lease by the check. It was given to complete the initial lease transaction and the notation thereon was in accordance with and reflective of such transaction.

Defendants claim there was testimony in behalf of plaintiff that the $5,000 "was paid as a deposit to secure performance of the lease" hence the court could not properly find such sum was intended as prepaid rent. They apparently refer to Taylor's testimony that Bomalick "wanted to guarantee the performance of the lease, that he knew we was (sic) good for it, . . . but he thought it would be better if we had enough deposit up to guarantee the performance of it, that we weren't going to lose any money; that the rent could be applied toward the end of the lease, and there was no chance of losing any money; all we had to do was live up to the lease." This testimony is not inconsistent with the court's finding that the $5,000 was prepaid rent. Certainly such testimony did not require a contrary finding. Actually, the prepayment of $5,000 in rent would serve "to guarantee the performance of the lease." In fact, from the standpoint of the lessor, there could hardly be a better guaranty or security than the prepayment of a substantial amount of rent.

The court found, *inter alia*, that "It is not true that plaintiff at any time was advised or knew that the sums referred to in plaintiff's complaint were not paid or received as prepaid rentals or that upon the termination of said lease and the release from liability of plaintiff thereunder that plaintiff would not be entitled to receive any of said money."

Appellants contend there is no legal foundation for this finding and no factual support for it. Their argument is, in the first place, that under the plain language of the lease, hereinbefore quoted, the lessee's right to occupy the premises without payment of rent during the last four months of the term of the lease was expressly made subject to the condition that the lease be then in effect; that the lease had been terminated by mutual consent; and that the effect of the termination agreement was to cut off any rights which plaintiff might have had to the $5,000. They cite *Friedman* v. *Isenbruck,* 111 Cal.App.2d 326 [244 P.2d 718]; *Foye* v. *Simpkinson,* 89 Cal.App. 119 [264 P. 331], and *Wetzler* v. *Patterson,* 73 Cal.App. 527 [238 P. 1077], for the proposition that the lessor may retain advance payments of rent upon the termination of a lease by mutual consent. If the judgment here on appeal had been against the Bomalicks and in favor of plaintiff on the theory that the latter was entitled to recover the $5,000 which it had paid as prepaid rent notwithstanding the mutual termination of the lease, then the cited authorities would no doubt be applicable. But that is not the situation here presented nor the theory upon which this judgment was rendered. Plaintiff's judgment is against Sanchez—not against the Bomalicks. Its foundation lies in the promise of Sanchez to pay plaintiff the amount of any rent prepaid by plaintiff to its lessors. The terms of the lease between plaintiff and the Bomalicks are, of course, important in determining the amount of such prepaid rent as a means of establishing plaintiff's rights against Sanchez but not as a basis for any judgment in plaintiff's favor against its lessors. Hence appellants' attack upon the challenged finding is without merit and their authorities wholly inapplicable.

In support of their argument that the quoted finding is error, appellants point to the testimony of Mr. Bomalick, and particularly to a telephone conversation between him and Taylor on September 26, 1951, and to what transpired on the occasion when the termination agreement was signed by them. Bomalick testified that he advised Taylor, in this telephone conversation and at various other times, that in the event of a termination of the lease there would be no refund. In view, however, of the trial court's findings, it is apparent the judge did not accept his testimony as true.

Appellants say "there is no doubt" Taylor was advised by Bomalick that plaintiff would not "get any money back if the lease were terminated at the time that the termination

agreement was signed." In order to evaluate this statement it is necessary to understand just what happened on that occasion. And in determining that we must, under settled principles, view the evidence most favorable to the party successful in the court below. Mr. Woodman, a witness to that transaction, testified that Taylor signed the termination agreement and handed it to Sanchez and that the latter gave it to Bomalick, who signed it and gave it back to Sanchez. This, of course, completed the execution of the termination agreement. Following this testimony Woodman was asked the question: "What happened next, do you recall?" His answer was: "Then Mr. Taylor asked Mr. Bomalick about the $5,000, when he was going to give it to him; and Mr. Bomalick said, "You never gave me $5,000.00." In response to this statement by Bomalick, Woodman said, "Yes, we did, Joe." Of course, what was said by Bomalick *after* the execution of the termination agreement could not serve to give plaintiff knowledge before the execution thereof that upon the termination of the lease plaintiff would not get back any of its prepaid rent. On the contrary, the foregoing testimony clearly justifies the inference that Taylor believed, when he executed the termination agreement, that a refund of the prepaid rent would be forthcoming, and supports the challenged finding that plaintiff had not been previously advised to the contrary. It is asserted on behalf of Bomalick that his statement that plaintiff never gave him $5,000 was immaterial since it was admitted in the answer that plaintiff paid the lessors $6,250.00 upon the execution of the original lease. But for Bomalick to deny having received the $5,000, even though he later admitted its receipt by his answer, was not without significance, particularly in passing on his credibility and the weight to be given to his testimony.

██ Defendants contend the evidence is insufficient to sustain the findings to the effect that (1) Sanchez agreed to pay plaintiff the prepaid rent it had paid, which was $5,000; and (2) that Bomalick agreed with Sanchez that if the latter were required to pay plaintiff the said $5,000, the Bomalicks would credit Sanchez in a like amount on the rentals to be paid by Sanchez under the new lease between him and the Bomalicks. This contention is lacking in merit.

With reference to the deal between plaintiff and Sanchez it will be recalled that their written agreement for the purchase and sale of the business required Sanchez to pay plaintiff the amount of the prepaid rent which the evidence established

to be $5,000. It was later decided to handle the transaction by a termination of the leases between plaintiff and the Bomalicks and the execution of a new lease between the latter and Sanchez rather than by an assignment of the substituted leases to Sanchez and a release of plaintiff from liability thereunder, as had been contemplated initially. It does not appear that this change of *modus operandi* was intended to relieve Sanchez from his obligation to pay plaintiff the prepaid rent unless he was not able to get free rent from the Bomalicks for the period covered by plaintiff's prepayment. When Sanchez handed Taylor the termination agreement for his signature the latter hesitated and expressed doubt as to whether he should sign it. Sanchez thereupon advised him he had submitted said agreement to his attorney, who had assured him that it was proper and the only way the transaction could be handled. Sanchez made no suggestion that his obligation to pay plaintiff the amount of the prepaid rent was in any way affected. In fact, he then reiterated his commitment by saying to Taylor: "I will see you get your $5,000."

When Sanchez and Taylor were at the escrow office on October 22, 1951, comment was made by the latter relative to the change of procedure by which the transaction was being consummated and Taylor said to Sanchez: "What about our $5,000.00?" Sanchez replied: "You will get your $5,000, don't you worry about it." This statement was obviously made as an inducement to get plaintiff to complete the sale. It was at this time that plaintiff gave Sanchez a letter guaranteeing that he would not be required to pay plaintiff and the Bomalicks rent for the same period. The clear inference from this circumstance is that Sanchez' obligation to pay plaintiff the prepaid rent still existed. He was to be relieved of it only in the event he was compelled to pay Bomalicks rent for the same period. This contingency had not happened and under the judgment it cannot happen.

Sanchez recognizes that he is obligated to pay the rent for the four months in question. On the witness stand he stated: "I am ready to pay the $5,000 if the court will tell me who to pay it to." He clarified the situation by this further statement to the court: "You see, your Honor, I have nothing to gain or lose one way or the other. Mr. Bomalick has given me a letter if I have to pay it to Mr. Taylor, I don't have to pay it to him. Mr. Taylor has given me a letter if I pay it to Mr. Bomalick, I don't have to pay it to him."

The rent for this period had been paid by plaintiff; Sanchez agreed to repay plaintiff the amount thereof; and the Bomalicks agreed to give Sanchez credit for such payment on the same basis under the new lease between them so that Sanchez would not be required to pay the $5,000 twice. Thus under the terms of the declaratory judgment the agreements between the respective parties are effectuated, and a just and completely fair result is reached for the owners will receive rent for the entire period,—the first lessee recovers his prepaid rent and the second lessee is not required to pay double rent for any period.

██ Defendants contend there is no evidence to support the finding that about October 4, 1951, the parties agreed there would be no assignment of the leases. It was about that time, the exact date being immaterial, that the parties executed the termination agreement under the circumstances herein recited. From the execution of that agreement the trial court could reasonably infer that the transaction was not to be concluded by assignment of the leases as had been initially contemplated by plaintiff and Sanchez.

██ The Bomalicks assert there is no evidence that Mr. Bomalick represented his wife in these dealings and therefore the judgment cannot stand as against her. No such suggestion was made in the trial court. The case was tried upon the theory that Mr. Bomalick spoke for the family interests. When a case is tried upon the basis that certain facts exist, their existence will be assumed on appeal. (*Handy* v. *Fitschen,* 9 Cal.App.2d 637, 640 [50 P.2d 1059]; *Goss* v. *Fanoe,* 114 Cal.App.2d 819, 826 [251 P.2d 337].) Furthermore, without reciting the details, it may fairly be said that the facts and circumstances justified the trial court in drawing the inference that Mr. Bomalick represented his wife in this entire matter.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.