[Civ. No. 28082.  Second Dist., Div. Two.  Jan. 26, 1965.]

MONOGRAM INDUSTRIES, INC., Plaintiff and Appellant, v. STATEWIDE THEATRE CIRCUIT, INC., Defendant and Appellant.

Fendler, Gershon & Warner and Harry L. Gershon for Plaintiff and Appellant.

Pacht, Ross, Warne, Bernhard & Sears and Harvey M. Grossman for Defendant and Respondent.

HERNDON, J.—Plaintiff appeals from the judgment entered in favor of defendant following a nonjury trial. Although the subject matter of the dispute presented for determination gives the superficial appearance of complexity, the single determinative issue in the case appears rather simple and its correct resolution quite clear and definite. The appearance of complexity is created almost entirely by the many

metamorphoses undergone by the present corporate parties hereto, and their predecessors in interest, and by the numerous component contracts of purchase that together constituted the entire transaction, only one of which contracts actually constitutes the basis of the controversy presented by this appeal.

In substance, the parties, through their predecessors in interest,[1] entered into a complex and detailed agreement whereby appellant agreed to sell and respondent agreed to buy the fee interests in four motion picture theaters and the leasehold interests in seven other theaters. This agreement is represented by three quite intricate documents of 16, 2 and 18 pages in length, respectively. With great particularity, the parties spelled out, *inter alia*, the manner in which the total consideration was to be paid and how taxes, rentals, insurance, utility payments or deposits, indebtednesses existing on conditional sales contracts, accrued vacations due employees, and sublessees' and concessionaires' rentals and deposits were, or were not to be, prorated as of the specified date of November 1, 1960, or were to be credited to one party or the other to the agreement.

Thus, the initial agreement provided generally that "All real and personal property taxes, utility charges, insurance, and all deferred and prepaid income and expenses in connection with the operation of the theatres listed above will be prorated as of the closing date." The second agreement after this initial one identified and specified in detail the exact disposition of each of these general items and many lesser ones which the parties subsequently added thereto. Among these many specifications was the following:

"Proration of rentals shall be required with respect to the following theatres: Corbin, Crest, Buena Park, Bay, Baldwin and Paramount Hollywood as of the close of business on November 1, 1960. It is understood by the parties hereto that certain of these prorations will be in favor of [appellant] and others will be in favor of [respondent]. Prorations shall be made promptly and checks exchanged for the amounts owing to each party."

In addition, this amendment contained the following general "catch-all" provision: "The parties acknowledge that

---

[1] For purpose of clarity, the parties and their respective predecessors in interest will be designated simply as "appellant" and "respondent" without regard to their literal historic identities at any given time unless a more specific identification is required.

the Agreement as amended does not specify all of the items of income and expense to be prorated. However, even though an item is not specified, it is nonetheless to be prorated if it relates to a period spanning November 1, 1960. The proration shall charge or credit [appellant] with items of expense or income attributable to the period prior to the close of business on November 1, 1960. Similarly, [respondent] shall be charged for or credited with items of income or expense attributable to the period subsequent to the close of business on November 1, 1960.''

In its attempt to establish a basis for its claim herein, appellant introduced into evidence a 15-year lease entered into on April 1, 1948, between the lessor of the Bay Theatre and one John D. Chaffin. This lease contained the following provision: ''As additional consideration, and as a bonus to the Lessors for entering into this lease, and not as security for Lessee's performance of this lease, the Lessee has this day unconditionally paid to the Lessors, the sum of Ten Thousand Dollars ($10,000.00) in cash, the receipt whereof is hereby acknowledged.''

Subsequently, however, the lease provided that if the lease should not have been terminated prior thereto, the final year's rent would be reduced by $10,000. In a later amendment to this lease, its term was extended three years with the following additional provision: ''It is understood that the lease deposit of $10,000.00 mentioned in said lease provided therein to be credited against rental for the last year of the term shall be held by the Lessor for the extended term and credited against total rental for the last year of the extended term, to wit, June 1, 1965, to May 31, 1966.''

The foregoing statement of facts is in itself sufficient to demonstrate the unmeritorious theory upon which appellant has attempted to recover herein. Appellant argued that this $10,000 paid to the lessors at the time of the execution of the 1948 lease constituted a rental payment, and, therefore, since it was to be applied to a period following November 1, 1960, respondent should be compelled to pay this sum in addition to the amount already received by appellant as the purchase price of this leasehold interest. The mere statement of such a contention clearly reveals that it is untenable.

The proration clauses contained in the parties' agreements have no relevancy to appellant's demand. That is, even assuming that this $10,000 sum paid some 12 years earlier was

neither a "bonus" nor a "lease deposit," as the various predecessors in interest to the lease had casually and ambiguously referred to it, and that it was in fact prepaid rent, the period to which appellant seeks to apply it neither "relates to a period spanning November 1, 1960" nor does appellant wish to "prorate" it over the entire period of the lease, i.e., it simply demands that respondent pay it the full $10,000 in addition to the agreed sum already paid to it by respondent as the consideration for the purchase of the remaining period of the leasehold, subject to whatever amounts were still owing thereon to the lessor.

The numerous decisions cited by both parties relating to the proper classification of such payments in actions by lessees against lessors for the return thereof have no application to the instant situation. For example, when A, as lessee, enters into a 10-year lease with B, pays $2,000 down and agrees to pay $1,000 per year thereafter with the last year to be "rent free" if the lease has not been earlier terminated, the proper legal classification of the initial extra $1,000 payment may be of some consequence in the event of an earlier termination. If it is a bonus or unconditionally prepaid rent, the lessor usually will be entitled to retain it in full in the event of a breach by the lessee. If it is only a security deposit, he will be entitled to retain only so much thereof as is necessary to compensate him for his damages resulting from the lessee's breach. (*Warming* v. *Shapiro*, 118 Cal. App.2d 72, 75 [257 P.2d 74], and decisions therein cited.)

However, in the example given, if C wishes to purchase from A the remainder of the leasehold after five years have expired, the parties will be concerned only with determining the value thereof, i.e., the amount by which the market value of the right to use the property for five years exceeds the $4,000 that remains to be paid to the lessor therefor. If they determine that the market value is then $8,000, C will pay A $4,000 and assume the $4,000 yet owing to B. If their agreement included a proration clause, it is apparent that this would refer to the $1,000 payment applicable to the yearly period during which the sale was consummated, and it could not be interpreted to mean that over and above the fair market price of $4,000 already paid by C to A, C had agreed to pay an additional $1,000 merely because under A's agreement with B, the total leasehold price would be paid up at the end of the ninth year of the lease.

The only California decision cited by the parties hereto which really has any bearing upon the issue here presented constitutes a clear refutation of appellant's contention. In *Frank Taylor, Inc.* v. *Bomalick,* 125 Cal.App.2d 753 [271 P.2d 188], this court was called upon to review a case wherein, in substance, the plaintiff had leased from defendants Bomalick certain property for five years at a monthly rental of $1,250. An additional $5,000 was paid at the time the lease was executed and the last four months of the leasehold were to be rent free.

Subsequently, defendant Sanchez desired to purchase plaintiff's automobile agency business which was being conducted on the leased property, contingent, of course, upon assignment of this leasehold interest to him. If the lessors would agree to an assignment, and assuming that the value of the use of the property had not decreased, it was apparent that the value of the remainder of plaintiff's five year term would be worth at least $5,000 more than the balance still owing to the lessors. The lessors, however, declined to agree to such assignment. Defendant Sanchez then agreed with plaintiff that if he would terminate this lease, he, Sanchez, would pay him $5,000. Thereafter, defendant Bomalick agreed with Sanchez that if he were required to pay this $5,000 to plaintiff, it would be credited against the new lease entered into between them.

We experienced no difficulty in affirming that trial court's judgment determining that all parties would be compelled to perform their agreements and that defendants Bomalick would not be heard to argue that they were entitled to retain plaintiff's prepaid $5,000 and demand that defendant Sanchez pay a further $5,000 as rental to them for the same period rather than returning it to plaintiff as agreed.

In our present case, appellant attempts to achieve essentially the same goal as was sought by the Bomalicks in that earlier case. That is, he wishes to retain the agreed purchase price representing the fair market value of the remainder of the leasehold paid to it by defendant and in addition receive a further $10,000 under an inapplicable proration clause.

In view of our foregoing analysis of the instant action, we deem it unnecessary to discuss further convincing evidence contained in the documents introduced into evidence which further demonstrate the chimerical nature of appellant's contentions herein. Such additional facts include (1) that the leasehold was not actually assigned to respondent, but rather

that the ownership of the subsidiary corporation which held the lease was transferred to it; (2) that in the instance of another theater wherein a true leasehold security deposit was involved, express provision was made for its repayment; and (3) that the parties even provided that if appellant should be unable to negotiate an extension or option to renew the lease here in question for an additional five-year period, then the total consideration for the entire transaction would be reduced by $25,000.

When these additional factors are considered, together with the entire tenor of the parties' agreement, the lack of merit in appellant's contentions is clearly revealed.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.