[Civ. No. 43081. Second Dist., Div. One. Sept. 4, 1974.]

CAROL D. BURGESS et al., Plaintiffs and Respondents, v.
BOARD OF EDUCATION OF THE NORWALK-LA MIRADA
UNIFIED SCHOOL DISTRICT, Defendant and Appellant;
KENNETH L. BALL et al., Real Parties in Interest and Respondents.

**COUNSEL**

John H. Larson, County Counsel, and Kenneth E. Reynolds, Deputy County Counsel, for Defendant and Appellant.

John B. Clausen, County Counsel (Contra Costa), and Gerald B. Becker, Deputy County Counsel, as Amici Curiae on behalf of Defendant and Appellant.

Baird, Baird, Wulfsberg & Williams, Baird, Baird, Wulfsberg, Williams & Belgum and John S. Williams for Plaintiffs and Respondents.

No appearance for Real Parties in Interest and Respondents.

## OPINION

**THOMPSON, J.**—In this appeal from a judgment pursuant to Code of Civil Procedure section 1094.5 setting aside an administrative determination approving the dismissal of respondents probationary teachers by appellant board of education, appellant contends: (1) respondents' petition for writ of mandate was not filed within the statutory period; (2) the trial court erred in determining that the findings of the board were not supported by substantial evidence before it because the trial court incorrectly deducted normal attrition in work force in computing the number of employees that could be terminated for decline in "average daily attendance" and applied an improper standard in concluding that the terminations here involved were not the result of a reduction in "a particular kind of service"; (3) the trial court erred in stating that appellant should reemploy terminated probationary employees in order of seniority; and (4) the trial court incorrectly stated a rule of computation of damages. We conclude that the trial court inadequately expressed the applicable rule of mitigation of damages and that the remainder of its actions are supported by the record and the law. Accordingly, we modify the judgment and affirm it as modified.

### Facts

The parties having conceded that the trial court correctly applied the substantial evidence test in reviewing the determination of the administrative agency,[1] we recite the record of proceedings before the board in the light most favorable to its decision.

In the first six months of the 1969-1970 school year, appellant, Board of Education of the Norwalk-La Mirada Unified School District (Board), had an average daily attendance (ADA) of pupils of 31,562. The corresponding ADA for the 1970-1971 years was 30,996. For the 1971-1972 year, it was 29,636. ADA declined 6.1 percent from the first six months of the 1969-1970 school year to the corresponding period of the 1971-1972 year. On January 5, 1970, the total certificated staff of em-

---

[1]Cf. *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29].

ployees of Board was 1,350. On January 5, 1971, the certificated staff numbered 1,339, and on March 1, 1972, 1,273. Reduction in certificated personnel to the March 1, 1972, number was due to normal attrition in the form of retirements, resignations, and the like. By 1972, the school district governed by the Board was experiencing financial difficulties. A "blue ribbon commission" was appointed to examine the problem and recommend solutions. Among the solutions suggested was an increase in class size in grades kindergarten through eight, and an increase in pupil-teacher ratio in grades nine through twelve to the maximum permitted by state law before a financial penalty in the form of a reduction in state financing to the district would be imposed.

Board adopted the suggestion. It determined that its certificated staff should be reduced by 144 employees, and on or before March 15, 1972, it notified 144 of its certificated employees that it had been recommended that their services would not be required for the 1972-1973 school year. Notices were withdrawn as to 29 of the employees in order of seniority and one notice was invalid, leaving notices of termination outstanding as to 114 of the district's certificated personnel. Of the 114, 77 were terminated for "decrease in average daily attendance," and 38 by reason of "reduction in a particular service," i.e., the increase in class size and in pupil-teacher ratio. Respondents are six probationary teachers, certificated employees of the school district who were among those given notice of termination.

After concededly appropriate action on the part of Board and respondents to initiate and defend the process, the matter of the propriety of Board's action terminating the services of respondents was administratively heard on May 1, 1972, by a hearing officer acting for Board. The hearing officer determined that the termination of employment of respondents was proper pursuant to Education Code sections 13443 and 13447, basing that conclusion upon findings that a reduction in certificated staff of 77 was justified by decline in "average daily attendance," and that a reduction of an additional 38 certificated teachers was sustained "by reason of reduction in supportive and educational services." The hearing officer computed permissible reduction in certificated personnel based upon decrease in ADA by applying the 6.1 percent reduction in ADA to 1,273, the actual number of certificated employees of the district as of March 1, 1972, ignoring the effect of prior reductions in staff from authorized strength due to normal attrition. He determined permissible deduction in certificated personnel by reason of decrease in services by treating increase in class size and student-teacher ratio plus the closing of one or more

elementary schools and the combining of one or more pairs of elementary schools under one principal as "reductions in a particular service." The decision of the hearing officer was adopted by the Board which, on May 15, 1972, mailed its decision to counsel for respondents.

On June 15, 1972, respondents requested the Board to prepare and deliver a transcript of the administrative record and proceedings. On August 15, 1972, the record was transmitted. It was received on August 17. On September 15, 1972, respondents filed their petition in administrative mandamus in the superior court, seeking review of the determination of the Board. The Board answered, denying the charging allegations of the petition and asserting the affirmative defense that respondents had not filed their lawsuit within the time permitted by statute. Respondents denied the affirmative defense by replication. On April 25, 1973, the court entered its judgment. It found that the petition of respondents was timely filed. It determined that the Board had erroneously computed the number of certificated employees that could be terminated for reduction of ADA, concluding that the 6.1 percentage of reduction figure must be first applied to the number of certificated employees of the district in the 1969-1970 year, the high year in the computation, and that reductions in certificated work force due to normal attrition since the 1969-1970 year should be deducted from the resulting figure to determine the permissible further reduction in force necessary by reason of reduction in ADA. The trial court ruled that increase in class size and in pupil-teacher ratio was not a reduction in a particular service as that term was used in the applicable statute so that no reduction in certificated employees was permissible on that ground. It remanded the matter to the Board for redetermination consistent with the trial court's findings of fact and conclusions of law. Finally, the judgment awards those respondents who are restored to their positions as the result of the Board's reconsideration "an amount equal to the amount which would have been paid them by [appellant] from the date of their termination to the date of their restoration to their positions plus interest at 7% per annum, with a deduction therefrom for earnings which each [respondent] received (gross earnings) for other employment during said period." This appeal followed.

## Timeliness of Petition for Writ of Mandate

Government Code section 11523 provides in pertinent part: "Judicial review [of the decision of an administrative agency covered by the Administrative Procedure Act] may be had by filing a petition for a writ of mandate in accordance with the provisions of the Code of Civil

Procedure, subject, however, to the statutes relating to the particular agency. Except as otherwise provided in this section any such petition shall be filed within 30 days after the last day on which reconsideration can be ordered. . . . Where petitioner, within 10 days after the last day on which reconsideration can be ordered, requests the agency to prepare all or any part of the record [of proceedings before it] the time within which a petition may be filed shall be extended until 30 days after its delivery to him. . . ."

Here the Board mailed its decision to respondents on May 15, 1972. Its power to order reconsideration expired on June 14, 30 days thereafter unless "the agency itself" set as the effective date of its decision a date prior to the expiration of the 30-day period. (Gov. Code, § 11521, subd. (a).) Respondents requested the Board to prepare the record of the proceedings before it on June 15, 1972, within 10 days after the last day on which reconsideration could have been ordered unless the Board itself set a prior date as the effective date of its decision. The petition for writ of mandate was filed within 30 days after delivery of the record.

Thus the timeliness of respondents' filing of their petition for review in the superior court depends upon the presence or absence of action by the Board "itself" shortening the period for reconsideration by establishing a special effective date of its decision. Nothing in the Board action purports to establish a special effective date. Appellant seeks to rectify the otherwise fatal flaw in its argument that respondents' petition in the superior court was untimely by arguing that by reason of Education Code section 13443, the Board's action was effective on May 15 as a matter of law. That statute, which governs the dismissal of probationary certificated employees of school districts and sets forth the procedure to be employed, does state in subdivision (d) that "The decision [by the board on a certificated employee's request for hearing resisting his dismissal] . . . shall be effective on May 15 of the year the proceeding is commenced." However, section 13443 of the Education Code also incorporates the Administrative Procedure Act, including Government Code section 11523, while making no specific reference to any special limitation upon the time for reconsideration or filing a petition for judicial review. Fairly construed, section 13443 of the Education Code establishes May 15 as the effective date of initial board decision on probationary teacher protests to dismissal, but not a limitation upon the time within which the board may reconsider a decision made by it. Such a limitation may, by the statute, be imposed by the board's decision "itself" but is not to be created by inference where the board has elected not to do so. (Cf. *Eichman* v. *Escondido etc. Sch.*

*Dist.*, 61 Cal.2d 100, 102 [37 Cal.Rptr. 199, 389 P.2d 727], with *Parker v. Board of Trustees*, 242 Cal.App.2d 614, 616-617 [51 Cal.Rptr. 653].)

The Board itself not having specified an effective date of its decision other than the date provided in Government Code section 11521, subdivision (a), respondents' petition for writ of mandate was timely filed in the superior court.

### Reduction in "Average Daily Attendance"

Education Code section 13447 provides that no permanent or probationary teacher may be dismissed for any reason other than one specified by statute. Section 13447 itself amplifies other statutory bases of dismissal by stating: "Whenever in any school year the average daily attendance in all of the schools of a district for the first six months in which school is in session shall have declined below the corresponding period of either of the previous two school years . . . and when in the opinion of the governing board of said district it shall have become necessary by reason of . . . such condition[ ] to decrease the number of permanent employees in said district, the said governing board may terminate the services of not more than a corresponding percentage of the certificated employees of said district, permanent as well as probationary, at the close of the school year; . . ." The opening paragraph of section 13447 makes its provisions applicable to probationary teachers such as respondents.

Here it is undisputed that in the second previous school year to 1969-1970 average daily attendance was 31,562, while in the 1971-1972 year it was 29,636. We accept the agreement of the parties that ADA had declined 6.1 percent from the 1969-1970 year. 6.1 percent of 1,350, the number of certificated employees of the school district in the 1969-1970 year, is 82.35. In fact, natural attrition had reduced the number of teachers by 77 in the two-year period. Thus a reduction of five teachers only was "necessary by reason of . . . [the] condition" of decline in average daily attendance. The trial court correctly found that the Board had erred in determining that the number was 77.

Appellant argues that normal attrition in the certificated employment force is to be disregarded in making the computation and that hence, once decline in average daily attendance is established, the number of employees at the end of the school year may be reduced in a corresponding percentage. We cannot accept that argument. It fails to consider that the governing board is directed by the Legislature to decrease the number of employees only when the reduction in average daily attendance itself

has made it "necessary" to do so. Ignoring normal attrition in certificated personnel results in a reduction of force not necessarily required by decline in average daily attendance.

Thus we conclude that the Board, in determining the number of teachers that could be dismissed by reason of decline in average daily attendance, was required to consider the number of certificated employees who had departed the system in the computation period.

### Reduction in Particular Kind of Service

Education Code section 13447 provides a second basis for dismissal of a certificated teacher, permanent or probationary. ". . . [W]henever a particular kind of service is to be reduced or discontinued not later than the beginning of the following school year, and when in the opinion of the governing board of [the] district it shall have become necessary by reason of . . . such condition[ ] to decrease the number of . . . employees in said district, the . . . governing board may terminate the services of not more than a corresponding percentage of the certificated employees . . . ." Appellant Board determined that reduction in class size and increase in pupil-teacher ratio was a reduction in a particular kind of service, i.e., teaching, which justified reduction of its certificated force by 38. The trial court held that the increase in class size and pupil-teacher ratio was not a "reduction in a particular service" as that term is used in the statute.

The history of the pertinent statutory language establishes that the trial court was correct. The genesis of the language is in School Code section 5.711 which, at one time, stated in pertinent part: "Whenever it becomes necessary to decrease the number of permanent employees in a school district on account of the discontinuance of a particular kind of service in such district, the governing board may dismiss so many of such employees as may be necessary at the close of the school year." The identical phrase "particular kind of service" having been carried into Education Code section 13447, which permits dismissal for reduction as well as discontinuance in service, we must construe the legislative intent to have been to refer to the same definition of "particular kind of service" in both section 13447 and its predecessor. "Particular kind of service," as used in the applicable statute, must thus be read as referring to a kind of service that a school district may discontinue and not merely reduce. Teaching in general is not such a service. (See, e.g., Ed. Code, §§ 8551, 8571.)

## Effect of Aborted Legislation

■    Appellant argues that despite the usual principles of statutory construction leading to the conclusions we have here reached with respect to the effect of decline in average daily attendance and the meaning of "reduction in a particular service," a different result is compelled by the fact that in the 1973-1974 regular ·session of the Legislature, Assembly Bill 543, which would have added language to Education Code section 13447 specifically adopting the construction used by us, was defeated.

Our Supreme Court has been less than consistent in its treatment of the effect to be given to failure of legislative action in the determination of legislative intent. In *People* v. *Daniels*, 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677], the court determined that legislative silence following a prior decision of the court was irrelevant where the ultimate result reached by the court was to overrule the prior decision and to restrict the interpretation of the statutory definition of kidnapping for the purpose of robbery contained in Penal Code section 209. Although the Legislature had not adopted the Model Penal Code, that code's definition of kidnapping contained in section 212.1 was held controlling as interpretive of Penal Code section 209. (71 Cal.2d at pp. 1127-1128, 1137-1138.) In *Nestle* v. *City of Santa Monica*, 6 Cal.3d 920 [101 Cal. Rptr. 568, 496 P.2d 480], it held that the failure of subsequent legislation to clear the Legislature controlled over an expression of intent in reports of the Law Revision Commission which had drafted the governing statute and of a Senate committee. In *Nestle*, the result of the court's reasoning was to restrict the doctrine of governmental immunity in tort. (6 Cal.3d at pp. 934-936.) In *Friends of Mammoth* v. *Board of Supervisors*, 8 Cal. 3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049], the court treated as without significance language of an earlier draft of a controlling statute eliminated by amendment in the legislative process where to do so increased the scope of an environmental protection statute over that which would have applied had significance been given to the deletion. (8 Cal.3d at pp. 264-265; see also dissenting opinion at pp. 279-281.)

Unable to reconcile the analytical approach of *Nestle* on the one hand and *Daniels* and *Friends of Mammoth* on the other,[2] we follow the precepts of the latest of the Supreme Court decisions, that in *Friends of Mammoth.* We thus consider the general rules of statutory construction to reach legislative intent as controlling over any inference concerning that intent that might conceivably flow from the failure of the Legislature to enact a bill

---

[2]The majority opinions in *Daniels, Nestle,* and *Friends of Mammoth* are the product of the same author, thus adding to the difficulty of reconciliation.

■■■■■■

proposed to it. That approach is more pertinent here than it was in *Friends of Mammoth*. In *Friends of Mammoth,* our Supreme Court discounted the refusal of the same session of the Legislature, which had enacted the statute construed by it, to enact the legislation in a form expressing precisely the meaning given to the statute by the court. (8 Cal.3d at pp. 279-281.) Here appellant relies upon the failure of a later legislative session to amend Education Code section 13447 to read in the fashion which we here adopt. It is the intent of the Legislature which adopted section 13447 in its present form and not that of some subsequent Legislature which controls us unless that subsequent Legislature's intent is expressed in some formal manner. No subsequent amendment to section 13447 or resolution concerning its construction is here present. The failure of the amendatory legislation to pass does not remedy the defect. The amendment may have failed because the Legislature felt it unnecessary to accomplish the result intended. It may have died for any of the multitude of reasons other than consideration on the merits that exist for the failure of measures to pass.

Thus we conclude that appellant's contention based upon the failure of passage of Assembly Bill 543 must be rejected.

## *Policy*

■ Appellant contends that the construction of Education Code section 13447 utilized by the trial court and approved by us places an intolerable burden upon financially troubled school districts which, for financial reasons, must retrench. If our function were legislative in character, the argument would be persuasive. Our job, however, is to adjudicate, not legislate. The governing policy having been set by statute is binding upon us. (See 43 Cal.Jur.2d, Schools, § 5.)

## *Seniority*

■ In its memorandum of decision, the trial court said: "7. Good faith. Ed. Code, § 13447 provides that even the probationary employees '. . . shall be terminated in the inverse in [*sic*] the order in which they were employed. . . .' If reductions are made pursuant to Ed. Code, § 13447, the Board's action in terminating an excessive number of employees and then promptly rehiring a number of them, apparently without regard to seniority, is a violation of Ed. Code, § 13447. Upon rehearing the Board will designate what would have been the proper priority to re-employ by inverse seniority. Where this was not done the Board's action in not re-employing certain employees who had greater seniority than those who

were re-employed was improper." The quoted portion of the memorandum of decision was not carried into the findings of fact, conclusions of law, or judgment. Appellant complains that the trial court erred in including the language in its memorandum of decision.

The contention lacks substance. The memorandum of decision was superseded by the judgment. (Cal. Rules of Court, rule 232(a).) It is not itself appealable.[3]

### Mitigation of Damages

■ The judgment states in part: "Those petitioners among the six (6) named petitioners who are restored to their positions as a result of [appellant's] reconsideration shall recover an amount equal to the amount which would have been paid them by respondent from the date of their termination to the date of their restoration to their positions plus interest at 7% per annum, with a deduction therefrom for earnings which each petitioner received (gross earnings) from other employment during said period." The provision for mitigation of damages contained in the quoted language is incomplete in not reducing damages otherwise recoverable by amounts that respondents "with reasonable diligence might have earned from other employment" during the period that they were wrongfully dismissed. (*California School Employees Assn.* v. *Personnel Commission,* 30 Cal.App.3d 241, 249-250 [106 Cal.Rptr. 283].)

### Disposition

Numbered paragraph "2" of the judgment is modified to insert between the words "employment" and "during," appearing in the last line of that paragraph, the phrase "or which each petitioner with reasonable diligence might have earned from other employment." The judgment is affirmed as modified. Respondents to recover their costs on appeal from appellant.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied September 25, 1974, and appellant's petition for a hearing by the Supreme Court was denied November 13, 1974.

---

[3]The quoted language is persuasive in its analysis of the factual situation as it bears upon the good faith of respondents' action.