[Civ. No. 48638. Second Dist., Div. One. Mar. 2, 1977.]

HENRY F. DEGENER et al., Plaintiffs and Appellants, v.
GOVERNING BOARD OF WISEBURN SCHOOL DISTRICT,
Defendant and Respondent.

COUNSEL

Reich, Adell & Crost, and Hirsch Adell for Plaintiffs and Appellants.

Paterson & Taggart and J. Michael Taggart for Defendant and Respondent.

OPINION

HANSON, J.—

## INTRODUCTION

This is an appeal by Henry F. Degener, Colleen Towata and Jeffrey Moss, certificated teachers (hereafter referred to collectively as Teachers), from a judgment of the superior court denying their application for relief by way of a petition for writ of mandate filed pursuant to Code of Civil Procedure section 1094.5. The petition sought to set aside a decision of the respondent Governing Board of Wiseburn School District (hereafter referred to as Board) which terminated their employment.

## THE CASE

The Board by a resolution passed on March 5, 1975, called for a discontinuance of the positions of administrative assistant, district librarian, district music consultant, counselor at Dana School, and reduction of the boys' physical education and girls' physical education programs and of the gifted and learning disability group programs.[1] This Board action would reduce by seven the number of certificated employees in the Wiseburn School District.

The superintendent, in compliance with Education Code sections 13443 and 13447, gave written notice of the impending reduction to the teachers who were affected by the resolution. Seven of these teachers who were notified that their services would no longer be required during the forthcoming school year requested a hearing under the Administrative Practices Act (Code Civ. Proc., § 1094.5; Ed. Code, § 13443, subd.

[1]Additionally, the resolution called for elimination of "part-time psychometric services" which has no bearing on the case at bench.

(c)). In conformity with the statutes, an "accusation" was filed and a hearing was conducted on April 30, 1975. The hearing officer's decision, rendered May 2, 1975, concluded, with the exception of physical education programs, that the services discontinued or reduced were within the parameters of Education Code section 13447—thus allowing the termination of employment of five certificated employees.

The Board, after considering the transcript of proceedings before the hearing officer and hearing oral arguments, determined that the reduction in the boys' physical education program and in the girls' physical education program came within the parameters of Education Code section 13447, as did the other mentioned services, which therefore permitted termination of employment of seven certificated employees.

Five of the seven whose employment was terminated joined in a petition for writ of mandate in the superior court seeking a review of the Board's decision. It was stipulated that one of the petitioners was re-employed and as to her the proceeding was moot. Findings of fact and conclusions of law and judgment in the superior court were in favor of the Board's determination. The trial court applied the independent judgment test. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]; *City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768, 776 [112 Cal.Rptr. 543, 537 P.2d 375].)

Three of the Teachers appeal from the judgment denying their petition for the writ.

### ISSUES

The determinative issues on appeal turn on the answers to the following questions:

(1) Whether or not Education Code section 13447 permits a reduction of a physical education program so long as the time allotment, following the reduction, is greater than that required by Education Code section 8572.5.

(2) Whether or not an administrative assistant's position constitutes a "particular kind of service" subject to elimination pursuant to Education Code section 13447.

(3) Whether or not a teacher may be terminated ahead of a retained teacher with less seniority where the terminated teacher did not become senior until after the time notice of termination was given, the hearing conducted and the Board's decision rendered pursuant to Education Code section 13447.

(4) Whether or not Education Code section 13447 requires a consideration of potential as distinguished from assured attrition when reducing or eliminating educational programs.

## DISCUSSION

*Does Education Code section 13447[2] (hereinafter section 13447) permit a reduction in teacher strength in a physical education program where the time allotment following the reduction is greater than that required by Education Code section 8572.5[3] (hereinafter section 8572.5)?*

---

[2]Section 13447 provides in full: "No permanent employee shall be deprived of his position for causes other than those specified in Sections 13313, 13327 and 13338, and Sections 13403 to 13441, inclusive, and no probationary employee shall be deprived of his position for cause other than as specified in Sections 13442 and 13443, except in accordance with the provisions of Section 13319 and Sections 13447 to 13452, inclusive. [¶] Whenever in any school year the average daily attendance in all of the schools of a district for the first six months in which school is in session shall have declined below the corresponding period of either of the previous two school years, or whenever a particular kind of service is to be reduced or discontinued not later than the beginning of the following school year, and when in the opinion of the governing board of said district it shall have become necessary by reason of either of such conditions to decrease the number of permanent employees in said district, the said governing board may terminate the services of not more than a corresponding percentage of the certificated employees of said district, permanent as well as probationary, at the close of the school year; provided, that the services of no permanent employee may be terminated under the provisions of this section while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render. [¶] Notice of such termination of services either for a reduction in attendance or reduction or discontinuance of a particular kind of service to take effect not later than the beginning of the following school year, shall be given before the 15th of May in the manner prescribed in Section 13443, and services of such employees shall be terminated in the inverse of the order in which they were employed, as determined by the board in accordance with the provisions of Sections 13262 and 13263 of this code. In the event that a permanent or probationary employee is not given the notices and a right to a hearing as provided for in Section 13443, he shall be deemed reemployed for the ensuing school year. [¶] The board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render."

[3]Section 8572.5 provides in full: "Notwithstanding the provisions of Sections 8551 and 8572, instruction in physical education in an elementary school maintaining any of grades 1 to 8 shall be for a total period of time of not less than 200 minutes each 10 schooldays, exclusive of recesses and the lunch period."

■ Here, Teachers contend in their brief on appeal and at oral argument that the Board is powerless to reduce the time allocated to physical education instruction even though the statutory minimum pursuant to section 8572.5 is satisfied. In this regard Teachers rely on *Burgess* v. *Board of Education* (1974) 41 Cal.App.3d 571 [116 Cal.Rptr. 183].

We disagree. We conclude (1) that *Burgess* is distinguishable and does not apply, and (2) that physical education instruction in excess of the statutory minimum mandated by section 8572.5 is subject to discretionary reduction pursuant to section 13447.

Section 13447 provides only two bases for reduction in teacher strength, namely, (1) a reduction in "average daily attendance" and (2) a reduction in a "particular kind of service."[4] In the case at bench since a reduction in "average daily attendance" is not present, the Board's termination of Teachers, if proper, must necessarily be based on a reduction in a "particular kind of service."

Teachers point to *Burgess* which held that the increase in class size and pupil-teacher ratio was not a " 'reduction in a particular service' " as that term is used in section 13447. The court stated at page 579 that the " '[p]articular kind of service,' as used in the applicable statute, must thus be read as referring to a kind of service that a school district may discontinue and not merely reduce. Teaching in general is not such a service. [Citation.]"

The *Burgess* case is distinguishable from the case at bench in a material way. The *Burgess* court was faced with a reduction of overall teaching services by increasing the size of all classes. Here, we are faced with a reduction of a specific curricular offering, namely, physical education. ■ In the latter context, logic and sound policy dictate that "[a]s long as a district does not reduce its offerings in a code-mandated course below the level required by law, that reduction should be considered a reduction of a particular kind of service. . . ." (See *Teacher Dismissals Under Section 13447 of the California Education Code* (1976) 27 Hastings L.J. 1401, 1411, cited by the Supreme Court in *Gassman* v. *Governing Board* (1976) 18 Cal.3d 137, 146 [133 Cal.Rptr. 1, 554 P.2d 321].)

---

[1]See footnote 2, *ante* page 694.

Thus we conclude that since *Burgess* did not define the term "teaching in general" it (*Burgess*) is inapplicable when faced with the teaching of particular or specific subjects.

We therefore hold for the foregoing reasons that where the district does not reduce a statutorily mandated course below that required by the statute, its reduction is to be considered proper under section 13447.

■ Teachers also apparently assert as another ground for reversal that there was no evidence supporting the conclusion that following the reduction in the physical education program the statutory minimum requirements of section 8572.5 would be satisfied. This argument was asserted for the first time on appeal.

The record reflects that Teachers' counsel's argument before the hearing officer was "that in order to be reduced, it has to be the kind of service that can be completely eliminated." There was no claim made by Teachers before the hearing officer that the reduction would result in a breach of the statutory minimum. Therefore, Teachers cannot claim for the first time on appeal that there was no evidence supporting a conclusion that following the reduction in the physical education program the statutory minimum requirements would be met. (See, e.g., *Fran-Well Heater Co.* v. *Robinson* (1960) 182 Cal.App.2d 125, 129 [2] [3] [5 Cal.Rptr. 900]; *Goss* v. *Fanoe* (1952) 114 Cal.App.2d 819, 826 [251 P.2d 337].)[5]

---

[5]The record on appeal reflects the following:

The Board's minutes of March 5, 1975, which listed various services to be reduced or discontinued included the following: "reduce the Dana School P.E. program by one teacher each: Boy's Program, one teacher and Girl's Program, one teacher; . . ."

Mr. Margolese (superintendent and secretary of the Board) testified before the hearing officer in response for summarization of programs reduced or discontinued under the Board's decision: "The . . . reduction of services in the P.E. [Physical Education] program, . . ." and Exhibit 2, introduced before the hearing officer, contains the statement, "Reduce by 50% each the Boys [*sic*] and Girls [*sic*] P.E. at Dana School."

In the superior court proceedings is a declaration of Mr. Margolese in which (among other things) it is said: "When the Board of Education adopted the resolution to terminate employees because of a discontinuance or reduction of a particular kind of service the Board was notified by me that the reduction of the physical education program would not bring it below the state mandated minimum time limits." It is not clear that this was admitted in evidence by the trial court; it nevertheless does show that proof would have established that which was assumed had Teachers made the assertion before the hearing officer. Additionally, Evidence Code section 664 provides for a presumption that official duty has been regularly performed and it is therefore to be presumed that the Board did not reduce the hours below the statutory minimum.

*Does an administrative assistant's position constitute a "particular kind of service" subject to elimination pursuant to section 13447?*

The thrust of Teachers' argument in this respect is that absent evidence of "details as to the nature of the services the administrative assistant performed," there is no basis for concluding that such services are subject to reduction or elimination pursuant to section 13447.

Here again during the proceedings before the hearing officer no similar claim was made by Teachers' counsel. At that hearing the stated position of Teachers' counsel was that "with respect to administrative assistant Kobabe" there had been no evidence of service of any notice upon him "as required by Education Code Section 13443.6." Counsel then argued that before "bumping" rights could be asserted such notice was required to be given the administrative assistant that he was being dismissed, i.e., his position being eliminated. After further arguments upon other matters, Mr. Margolese was recalled and it was established that required notice had been given to administrative assistant Kobabe. Nothing further was asserted by Teachers' counsel in this respect before the hearing officer. At no time before the hearing officer was it contended that elimination of the position of administrative assistant did not come within the provisions of section 13447.

Accordingly, since the parties (including Teachers) at the proceedings before the hearing officer failed to raise the issue whether or not "administrative assistant" was a particular kind of service, it cannot be raised for the first time on appeal. (See, e.g., *Frank Taylor, Inc.* v. *Bomalick* (1954) 125 Cal.App.2d 753, 762 [6] [271 P.2d 188]; *Handy* v. *Fitschen* (1935) 9 Cal.App.2d 637, 640 [2] [50 P.2d 1059].)[6]

*Is it proper to terminate a teacher who becomes senior to a retained teacher after the termination notice was given, the hearing conducted and the Board's decision rendered pursuant to section 13447?*

---

[6]The record before the hearing officer showed that administrative assistant Kobabe held credentials of general secondary, secondary administration, and elementary administration with tenure seniority 1966-1967; his seniority entitled reassignment to the position of principal, each of the three principals (one of whom would be ousted) would be entitled to reassignment on seniority basis to teaching and thereby one teaching position would be reduced or eliminated. Kobabe's position as administrative assistant was within the parameters of section 13447 as correctly determined by both the hearing officer's proposed determination and the Board's decision. (See also: Ed. Code, § 13055; Cal. Admin. Code, tit. 5, § 5802, subds. (b) and (c).)

Here Mr. Degener's filed credentials through and after the Board's decision of May 13, 1975, made him competent only to teach physical education. During that same period of time Ms. Gail Adamson's filed credentials qualified her for retention as a teacher over Mr. Degener since she was qualified to teach her subject from which he therefore could not "bump" her. Mr. Degener did not receive a credential which would have placed him ahead of Ms. Adamson from the State Board of Education until after the Board's decision of May 13, 1975, or until after March 15, the last date upon which the Board could have notified Ms. Adamson that her services would not be needed for the following school year.[7]

On appeal Mr. Degener argues that since his application for the credential which gave him seniority over Ms. Adamson predated Board action California Administrative Code, title 5, section 6071, subdivision (a), provides that when college and university work requirements for a credential have been met by the date of application, the date of the application is to be considered as the date of issuance of the credential.

The record on appeal reflects (1) that Mr. Degener could not be assured of the new credential until it was issued; (2) that there is no showing or claim that the Board knew that he had made application for the additional certificate; and (3) that other employees may have unknown applications with the state board and school district authorities would never know to whom to give notice.

As pointed out by the Board: "[A] school board can only authorize a teacher to teach within his credential. At the time a district must prepare its lay-off notices it must analyze carefully the number of people to be laid-off, the seniority listing of employees, and the credentials and qualifications of the individuals. If a district decides it must lay-off a certain number of employees, it must give those employees proper notice. Once March 15 passes by a district may not notify additional employees that they may be terminated. . . . A district does not have the right to add to the lay-off list. [¶] . . . Respondent [Board] cannot be held accountable for the fact that Appellant Degener received his credential *after* all notices were sent, a hearing held, and final Board adoption of the decision." (Italics in original.)

---

[7]We do not determine whether the absence of Mr. Degener's enlarged credentials is to be considered as of the date of notice to him, as of the date of the accusation, as of the date of the hearing before the hearing officer, or as of the date of the Board's decision because his credential was not received or filed until after the Board's decision.

In view of the foregoing, we conclude that to give effect to the California Administrative Code provision as urged by Mr. Degener would alter and conflict with the provisions and purposes of the statutes—particularly that which sets March 15 as the last day for notification to employees by the Board of termination of employment and makes reemployment assured absent notice and would effectively challenge the statutory scheme adopted by the Legislature which cannot be sanctioned. (*Cooper v. Swoap* (1974) 11 Cal.3d 856, 864 [3] [115 Cal.Rptr. 1, 524 P.2d 97]; *Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 815 [9] [114 Cal.Rptr. 577, 523 P.2d 617].)

In his reply brief on appeal, Mr. Degener also asserts that the Board rehired Sharon Jansta whose "ranking" was lower than his. The record shows that Ms. Jansta originally was one of the petitioning Teachers and "It was stipulated by attorney for Petitioners and accepted by the Court that Petitioner [Sharon] Jansta was reemployed by Respondent [Board] and therefore as to her the Petition is moot." Therefore, since Mr. Degener did not raise the issue before the trial court and only raised it for the first time on appeal in his reply brief, it comes too late. (*Sinclair* v. *Aquarius Electronics, Inc.* (1974) 42 Cal.App.3d 216, 229 [116 Cal.Rptr. 654]; *Diamond Springs Lime Co.* v. *American River Constructors* (1971) 16 Cal.App.3d 581, 609 [94 Cal.Rptr. 200]; *Utz* v. *Aureguy* (1952) 109 Cal.App.2d 803, 808 [241 P.2d 639].)

*Does section 13447 require a consideration of all potential as distinguished from assured attrition in teacher rank when reducing or eliminating educational programs?*

Teachers' assert that termination of employment pursuant to section 13447 requires the Board to consider such potential attrition as those due to voluntary departures from employment, retirements or leaves of absence.

In *Lewin* v. *Board of Trustees* (1976) 62 Cal.App.3d 977 [133 Cal.Rptr. 385], the court said at page 982: "[W]e agree that the board must consider positively assured attrition, such as that which has already occurred in the computation period and mandatory retirements. In our view, however, the board should not be compelled to allocate future resources based solely on projections and estimates of other sorts of potential attrition. Before 15 March of each year the Board must make its preliminary determination of the number of permanent employees

not to be re-employed for the following year. Board members are not soothsayers. Voluntary retirements, resignations, and deaths may occur —and they may not. Certificated employees cannot have it both ways: they cannot expect to receive early notice of termination and also to limit that notice by yet unknown later events."

Here, the Board expressly found the termination or reduction was for the welfare of the schools and pupils and was within the parameters of section 13447. In its findings, it stated: "No permanent or probationary certificated employee with less seniority is being retained for services for which any respondent [Teacher] is certificated and competent to render."

Therefore, we conclude in the instant case the Board, in determining who was to be retained, properly kept only those whose seniority and certification placed them ahead of those being terminated and considered only assured attrition but not potential attrition in accordance with Lewin.[8]

### DISPOSITION

The judgment is affirmed in all respects.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied March 24, 1977, and appellants' petition for a hearing by the Supreme Court was denied April 28, 1977.

---

[8]If, perchance, a teacher retained for service actually retired or resigned or took leave of absence and thereby created an opening for employment, then petitioning Teachers (according to seniority and proper credential) have preferance. (See, Ed. Code, § 13448.)