Filed 12/30/24 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| CASA MIRA HOMEOWNERS ASSOCIATION, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CALIFORNIA COASTAL COMMISSION, <br><br> Defendant and Appellant. | A168645 <br><br> (County of San Mateo <br> Super. Ct. No. 19CIV04677) <br><br> **ORDER MODIFYING OPINION AND DENYING REHEARING** <br> **[NO CHANGE IN JUDGMENT]** |

**THE COURT***:

It is ordered that the published opinion filed on December 12, 2024, be modified as follows:

On page 10, in the first full paragraph, following the first sentence and parenthetical citations, add the following sentence:

It is also consistent with legislative goals identified in the Coastal Act when adopted in 1977.  (Former § 30001.5, subds. (a)–(b) [to "[p]rotect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and manmade resources," and to "[a]ssure orderly, balanced utilization and conservation of coastal zone

---

* Fujisaki, Acting P. J., Petrou, J., and Rodríguez, J. participated in the decision.

resources taking into account the social and economic needs of the people of the state"].)

Modify the beginning of the next sentence, adding "The interpretation" so that the full sentence states:

The interpretation further promotes the Coastal Act's purpose of "protect[ing] public and private property" (§ 30001, subd. (c)) by ensuring pre-1977 structures are entitled to shoreline protection when in danger of erosion under section 30235, and mandating developments built afterwards adhere to setback and structural integrity requirements in section 30253.

There is no change in the judgment.

Respondent's petition for rehearing, filed December 23, 2024, is denied.


Dated:  _12/30/2024_          ___FUJISAKI, ACTING P.J._ , Acting P. J.

A168645; *Casa Mira Homeowners Assoc. v. California Coastal Com.*

San Mateo County Superior Court, Hon. Marie S. Weiner.

Rob Bonta, Attorney General, Elizabeth S. St. John, Acting Assistant Attorney General, Daniel A. Olivas, Assistant Attorney General, David G. Alderson and Joel S. Jacobs, Deputy Attorneys General, for Defendant and Appellant California Coastal Commission.

Environmental Law Clinic, Mills Legal Clinic at Stanford Law School, Deborah A. Sivas and Amanda Zerbe for Surfrider Foundation as Amicus Curiae on behalf of Defendant and Appellant California Coastal Commission.

Law Offices of Thomas D. Roth and Thomas D. Roth, for Plaintiff and Respondent Casa Mira Homeowners Association.

Hanson Bridgett, Nathan A. Metcalf, Sean G. Herman and Ellis F. Raskin for Bay Area Council and Bay Planning Coalition, as Amici Curiae on behalf of Plaintiff and Respondent Casa Mira Homeowners Association.

Cox, Castle & Nicholson, Stanley W. Lamport and Morgan L. Gallagher for California Building Industry Association and California Business Properties Association, as Amici Curiae on behalf of Plaintiff and Respondent Casa Mira Homeowners Association.

Nossaman, Steven H. Kaufmann for Capistrano Bay District, Gary Grossman, Pajaro Dunes Association, Pajaro Dunes North Association, Coastal Property Owners Association of Santa Cruz County, and Smart Coast California; Devaney Pate Morris & Cameron and Leslie E. Devaney for City of Del Mar; Rutan & Tucker, A. Patrick Munoz for City of Dana Point; Seren Legal, Katrina Kasey Corbit for Alliance for Coastal Marin Villages, as Amici Curiae on behalf of Plaintiff and Respondent Casa Mira Homeowners Association.

G10 Law, Louis A. Galuppo and Daniel T. Watts for Beach Cities Preservation Alliance, as Amicus Curiae on behalf of Plaintiff and Respondent Casa Mira Homeowners Association.

Filed 12/12/24 (unmodified opn.)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| CASA MIRA HOMEOWNERS ASSOCIATION, <br><br>    Plaintiff and Respondent, <br><br>    v. <br><br> CALIFORNIA COASTAL COMMISSION, <br><br>    Defendant and Appellant. | A168645 <br><br> (County of San Mateo Super. Ct. No. 19CIV04677) |


The California Coastal Act of 1976 (Coastal Act; Pub. Resources Code, § 30000 et seq., undesignated statutory references are to this code) authorizes construction — such as a seawall — that alters the natural shoreline when necessary "to serve coastal-dependent uses or to protect existing structures . . . in danger from erosion." (§ 30235.) The California Coastal Commission (Commission) construes "existing structures" to mean structures that existed prior to January 1, 1977, the effective date of the Coastal Act. On that basis, it denied the request of Casa Mira Homeowners Association (Casa Mira) and its members for a coastal development permit to build a seawall to protect a condominium complex and sewer line built in 1984. It also concluded a 50-foot — rather than a 257-foot — seawall was sufficient to protect the California Coastal Trail (Coastal Trail) and an apartment complex built in 1972, both in danger of erosion. The Commission

1

determined that relocating the trail inland was a feasible alternative to shoreline armoring.

Casa Mira petitioned for a writ of mandate to vacate the Commission's decision, which the trial court granted. The Commission now asks us to decide whether it correctly interpreted "existing structures" or whether, as Casa Mira argues, those words mean "existing at the time of the seawall application." We also consider whether sufficient evidence supported the Commission's finding that relocating the Coastal Trail is a feasible alternative to constructing a seawall. We conclude "existing structures," in context, means structures that existed before the Coastal Act's effective date. Because the trial court concluded otherwise, we reverse that portion of the judgment. But because we conclude the Commission's finding concerning the feasibility of protecting the trail without the requested seawall is not supported by substantial evidence, we otherwise affirm.

## BACKGROUND

In 2018 Casa Mira applied for a coastal development permit to construct a 257-foot seawall that would protect several structures along a coastal bluff in Half Moon Bay in danger from erosion— a four-building condominium complex and sewer line built in 1984, a four-unit apartment building built in 1972 located seaward of the condominiums, and a segment of the Coastal Trail. The proposed seawall would completely armor and protect the bluff downcoast of the apartments. A few years prior, approximately 20 feet of the bluff eroded and collapsed during heavy rains. At the time, the Commission issued two emergency coastal development permits allowing the temporary placement of 4,000 tons of rock, known as riprap, to prevent further erosion. There is currently no formal vertical beach access available from the blufftop to the sandy beach level. The

2

seawall would replace the emergency riprap revetment and would include a beach access stairway with a connection to the inland Coastal Trail.

Commission staff recommended approving the 257-foot seawall. Section 30235, staff explained, permits the construction of protective shoreline works when necessary to serve coastal-dependent uses or to protect existing structures — that is, structures existing prior to the effective date of the Coastal Act on January 1, 1977 — in danger of erosion. Thus, the apartments — built in 1972 — and the Coastal Trail — a coastal-dependent use because it requires siting adjacent to the ocean to serve its purpose — qualified for armoring. The sewer line and the condominiums, all constructed in 1984, did not. Moreover, the current setbacks for the apartments and the Coastal Trail were insufficient to protect them from erosion, which would worsen due to ongoing sea level rise and predicted increase in extreme weather events. Staff further concluded there were no feasible alternatives to armoring the shoreline, and a 257-foot seawall would prevent the loss of the apartments and the Coastal Trail while minimizing impacts to coastal resources.

The Commission agreed with the staff's interpretation of section 30235, concluding only the apartments and Coastal Trail were entitled to armoring. But it only approved a 50-foot section of the seawall to protect the apartments, not the trail. According to the Commission, the trail could be relocated to loop inland of the condominiums, a feasible, less environmentally damaging alternative to the seawall.

Casa Mira petitioned for a writ of mandate to vacate the Commission's decision. The trial court rejected the Commission's interpretation of section 30235. It concluded the statute's plain language mandates a permit for a seawall or revetment if a structure *presently exists* and is in danger from

erosion. Thus, it determined the Commission prejudicially erred by finding the condominiums and the sewer line were not entitled to any seawall or other protection. In addition, the court concluded, the Commission's finding that the Coastal Trail could be relocated away from the ocean rather than protected with a seawall lacked sufficient evidence. The court entered a judgment in favor of Casa Mira and issued a peremptory writ of mandate ordering the Commission to set aside its decision on Casa Mira's coastal development permit application.

## DISCUSSION

The Commission contends the trial court erred by issuing the writ of mandate. We examine whether the Commission engaged in a prejudicial abuse of discretion — i.e., not proceeding in the manner required by law, decision not supported by the findings, or findings not supported by substantial evidence. (*Friends, Artists & Neighbors of Elkhorn Slough v. California Coastal Com.* (2021) 72 Cal.App.5th 666, 692.) On appeal, we affirm the Commission's decision if supported by substantial evidence. (*City of San Diego v. California Coastal Com.* (1981) 119 Cal.App.3d 228, 232.) We presume its decision is correct and supported by substantial evidence unless petitioners produce or cite evidence to the contrary. (*Smith v. Regents of University of California* (1976) 58 Cal.App.3d 397, 404–405.) We review questions of law de novo. (*Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1261.)

## I.

The Commission contends the trial court erred by construing "existing structures" in section 30235 to mean structures that presently exist at the time an applicant seeks a coastal development permit. According to the Commission, "existing structures" refers to structures that existed prior to

4

January 1, 1977, the effective date of the Coastal Act.  We review this question of statutory interpretation de novo, giving the statute's words their plain, ordinary meaning and considering them in the context of the entire statutory framework to effectuate the Legislature's purpose.  (*Surfrider Foundation v. Martins Beach 1, LLC* (2017) 14 Cal.App.5th 238, 251; *Reddell v. California Coastal Com*. (2009) 180 Cal.App.4th 956, 965.)  If the text evinces a plain, unmistakable meaning, further inquiry is unnecessary.  (*Surfrider*, at p. 251.)  But where the language is ambiguous or susceptible to other reasonable interpretations, we employ extrinsic aids — e.g., legislative history, contemporaneous administrative construction, public policy — to interpret the statute.  (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 803.)  We liberally construe Coastal Act provisions, " 'giving the highest priority to environmental considerations.' " (*Surfrider*, at p. 251.)  Having engaged in that review, we agree with the Commission.

## A.

The Coastal Act was designed to "[p]rotect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources."  (§ 30001.5, subd. (a); *Kracke v. City of Santa Barbara* (2021) 63 Cal.App.5th 1089, 1095.)  It seeks to "[m]aximize public access to and along the coast," consistent with "sound resources conservation principles and constitutionally protected rights of private property owners."  (§ 30001.5, subd. (c).)  Coastal zone development — broadly defined to include the construction, placement or erection of any solid material or structure — requires a coastal development permit.  (§§ 30106, 30600, subd. (a).)  Section 30235 addresses construction that alters the natural shoreline.  That provision states, in relevant part, seawalls and other

5

construction altering natural shoreline processes "shall be permitted when required to serve coastal-dependent uses or to protect existing structures or public beaches in danger from erosion and when designed to eliminate or mitigate adverse impacts on local shoreline sand supply." (§ 30235.) In other words, the Commission *must* issue a permit for construction of a seawall or other armoring to protect existing structures in danger of erosion, assuming the other requirements are fulfilled. (*Ibid*; *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 [interpreting the term "shall" as a mandatory act].)

The text of section 30235 does not resolve the dispute here. Nothing in this section or the Coastal Act defines "existing structures." (§§ 30100 ["[u]nless the context otherwise requires, the definitions in this chapter govern the interpretation of" the Coastal Act], 30235, 30000 et seq.) Citing Dictionary.com, Casa Mira contends the ordinary meaning of "existing" is " 'already or previously in place.' " (*Busker v. Wabtec Corp.* (2021) 11 Cal.5th 1147, 1158–1159 [examining dictionary definitions for statutory interpretation].) Merriam-Webster identifies "existing" as "having being at the present time." (Merriam-Webster's Collegiate Thesaurus Online (2024) <https://unabridged.merriam-webster.com/thesaurus/existing> [as of Dec. 12, 2024].) But this begs the question of *when* the structures must be "already or previously in place" or "hav[e] being" — at the time the statute was written or at the time the statute is being applied. The statutory text does not readily answer that critical question. (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253 ["We may not rewrite the statute to conform to an assumed intention that does not appear in its language"].)

Casa Mira urges us to apply the rule "that a word given a particular meaning in one part of a law should be given the same meaning in other

6

parts of the same law." (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 289.) That canon is less useful to Casa Mira than it believes. Even though the word "existing" appears throughout the Coastal Act, Casa Mira fails to account for its inconsistent usage. (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008 [words may have "different meanings within a single statute"].)

To illustrate: one provision requires "New residential, commercial, or industrial development . . . shall be located within, contiguous with, or in close proximity to, existing developed areas able to accommodate it or, where such areas are not able to accommodate it . . . ." (§ 30250, subd. (a).) The Legislature distinguished between development that existed at the time the Coastal Act was enacted — "existing developed areas" — and development that will be created after the Coastal Act's passage — new development. (*Ibid.*) Reading "existing" in this section to include *any* development renders the reference to new developments surplusage. (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.*, *supra*, 46 Cal.4th at p. 289 ["courts should, if possible, accord meaning to every word and phrase in a statute so as to better effectuate the Legislature's intent"]; §§ 30001, subd. (d) ["existing developed uses, and future developments that are carefully planned and developed consistent with the policies of this division, are essential to the economic and social well-being" of the people of California], 30007 [nothing in the Coastal Act exempts local governments from "any other obligation related to housing imposed by existing law or any law hereafter enacted"]; 30261 [encouraging multicompany use of "existing and new tanker facilities" to "the maximum extent feasible and legally permissible" as well as requiring "[n]ew tanker terminals" be situated "to avoid risk to environmentally sensitive areas"].)

7

On the other hand, other Coastal Act provisions using the term "existing" appear to refer to post-enactment activity. For example, section 30705 governs diking, filling, or dredging water areas and provides the "design and location of new or expanded facilities shall . . . take advantage of existing water depths, water circulation, siltation patterns, and means available to reduce controllable sedimentation so as to diminish the need for future dredging." (*Id*. subd. (b).) In this context, "existing" likely refers to marine conditions that exist at the time the new facility is being constructed or expanded. It makes little sense for a new constructed facility to "take advantage" of water conditions that existed when the Coastal Act was passed.

Thus, we cannot conclude use of the word "existing" in the Coastal Act answers the question presented here. (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.*, *supra*, 46 Cal.4th at p. 289.) And unlike these other provisions, the rest of section 30235 does not assist in determining the intended meaning of "existing structures." (*Ibid*.) Rather, it is susceptible to both competing interpretations. (*Joannou v. City of Rancho Palos Verdes* (2013) 219 Cal.App.4th 746, 752.)

### B.

Yet when one views section 30235 in light of the Coastal Act as a whole — highlighting additional provisions governing shoreline armoring in section 30253 — it is apparent "existing structures" refers to structures existing prior to the Coastal Act's effective date. (*Surfrider Foundation v. Martins Beach 1, LLC*, *supra*, 14 Cal.App.5th at p. 251; *Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 166 [" 'we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose' "].) Section 30253 requires "new

8

development" to minimize adverse impacts in the coastal zone. Among other things, "new development" shall "[a]ssure stability and structural integrity, and neither create nor contribute significantly to erosion" of the "site or surrounding area or in any way require the construction of protective devices that would substantially alter natural landforms along bluffs and cliffs."[1] (§ 30253, subd. (b).) Accordingly, to the extent new development is authorized, it must comply with mandatory siting and structural requirements so as to not require the construction of destructive shoreline protection. (*Ibid*; *Tarrant Bell Property, LLC v. Superior Court*, *supra*, 51 Cal.4th at p. 542.)

Together, sections 30235 and 30253 create a shoreline protection management framework. Section 30235 is designed to protect structures built prior to the enactment of section 30253's siting and structural requirements — when the Coastal Act did not yet exist. Such structures may not necessarily have been built in a manner to avoid the need for shoreline protection at some point. In those circumstances, section 30235 guarantees "existing" structures protection from coastal erosion — shoreline protection "shall be permitted when required . . . to protect existing structures or public beaches in danger from erosion." But after enactment of the Coastal Act, structures cannot be built in a manner that requires shoreline armoring — "[n]ew development shall" not "in any way require the construction of protective devices that would substantially alter natural landforms along bluffs and cliffs." (§ 30253, subd. (b).) The statutes logically distinguish

---

[1] New development must also "[m]inimize risks to life and property in areas of high geologic, flood, and fire hazard"; "[b]e consistent with requirements imposed by an air pollution control district or the State Air Resources Board as to each particular development"; and "[m]inimize energy consumption and vehicle miles traveled." (§ 30253, subds. (a), (c)–(d).)

between structures that are entitled to the privilege of shoreline armoring when in danger of erosion — structures built prior to January 1, 1977 — and those that cannot require shoreline armoring — structures constructed after Coastal Act enactment that must adhere to section 30253's siting requirements for structural integrity and stability.

This interpretation effectuates the Coastal Act's goal to "[a]nticipate, assess, plan for, and, to the extent feasible, avoid, minimize, and mitigate the adverse environmental and economic effects of sea level rise within the coastal zone." (§§ 30001.5, subd. (f), 30009; *Yeager v. Blue Cross of California* (2009) 175 Cal.App.4th 1098, 1103, fn. omitted [legislative "findings and statements of purpose in a statute's preamble," though not binding, "can be illuminating if a statute is ambiguous"].) It further promotes the Coastal Act's purpose of "protect[ing] public and private property" (§ 30001, subd. (c)) by ensuring pre-1977 structures are entitled to shoreline protection when in danger of erosion under section 30235, and mandating developments built afterwards adhere to setback and structural integrity requirements in section 30253. Thereby, the Coastal Act protects both types of structures — existing structures and new developments — in different ways according to their dates of construction and accompanying building requirements. In sum, we read "existing structures" in section 30235 to refer to structures existing prior to the Coastal Act's effective date on January 1, 1977.

### C.

Casa Mira proffers a series of arguments disputing this conclusion; we find none persuasive.[2] First, it suggests this interpretation renders section

---

[2] Casa Mira moved to strike portions of Surfrider Foundation's amicus curiae brief that are unsupported by record citations. We deny the motion to strike but will ignore the unsupported references. (*Colt v. Freedom Communications, Inc.* (2003) 109 Cal.App.4th 1551, 1560.)

10

30235 internally inconsistent. Specifically, the second sentence of section 30235 provides, "Existing marine structures causing water stagnation contributing to pollution problems and fishkills should be phased out or upgraded where feasible." Defining both "existing structures" and "existing marine structures" as those existing prior to the Coastal Act's effective date on January 1, 1977, Casa Mira asserts, precludes authorities from phasing out or upgrading post-1977 marine structure such as an oil platform contributing to water pollution. Not so.

This narrow reading ignores other Coastal Act provisions governing marine resources and water pollution. (E.g., §§ 30230 ["[u]ses of the marine environment *shall* be carried out in a manner that will sustain the biological productivity of coastal waters and that will maintain healthy populations of all species of marine organisms adequate for long–term commercial, recreational, scientific, and educational purposes"], italics added, 30231 [requiring maintenance and, where feasible, restoration of "biological productivity and the quality of coastal waters" to protect optimum marine organism populations and human health by among other things "minimizing adverse effects of waste water discharges and entrainment, controlling runoff"].) For oil and gas development in particular, new and expanded oil and gas development may be permitted if, among other things, the "development is performed safely and consistent with the geologic conditions of the well site"; pipelines transporting oil shall "ensure maximum protection of public health and safety and of the integrity and productively of terrestrial and marine ecosystems." (§ 30262, subd. (a)(1), (5).) Thus, reading the Coastal Act as a whole, any marine structure, regardless of when it was constructed, must comply with these mandates.

11

Next, Casa Mira contends section 30253 merely clarifies that a new development must not depend on a seawall when constructed. Casa Mira attempts to harmonize sections 30235 and 30253 by arguing they authorize shoreline protection due to threats of erosion that arise decades after a new development has been constructed. There are two flaws with this analysis. First, while we agree section 30253 prohibits the construction of a new development that depends on the simultaneous construction of a seawall, nothing in the statute limits this prohibition to the initial construction. It states that new development shall not "in any way" require the construction of protective devices that would substantially alter natural landforms along bluffs and cliffs. (§ 30253, subd. (b).) The phrase "in any way" is broad, encompassing current and *prospective* need for armoring for the life of the structure, not merely short-term construction-related impacts of a new development. (*Ibid.*; *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [" 'Any' " is a term of broad inclusion, meaning "without limit and no matter what kind"].)

This reading comports with the legislative history of section 30253.[3] (*Becerra v. Superior Court* (2020) 44 Cal.App.5th 897, 920.) The California Coastal Plan, completed in 1975 (Coastal Plan) — a study mandated by Proposition 20 articulating policy recommendations that guided the

---

[3] We grant amici curiae City of Del Mar et al.'s unopposed request for judicial notice of the legislative history of Senate Bill No. 1277 (1975–1976 Reg. Sess.) — approved by the Legislature in 1976 and enacted into law as section 30000 et seq.— and Assembly Bill Nos. 2943 (2001–2002 Reg. Sess.) and 1129 (2017–2018 Reg. Sess.). (Evid. Code, § 452, subd. (c); *California School Bds. Assn. v. State Bd. of Education* (2010) 186 Cal.App.4th 1298, 1307 & fn. 4.) We deny the remainder of the request for judicial notice as other materials are not relevant to our analysis. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6.)

12

Legislature when drafting the Coastal Act — expressly warned the "best means of avoiding the many problems associated with construction of bluff protective works . . . is to limit construction on or near bluffs that might eventually require such works." (Cal. Coastal Zone Conservation Com., Cal. Coastal Plan (1975) p. 89; *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 162–163 [tracing the history of the Coastal Act preceded by Prop. 20, entitled the California Coastal Zone Conservation Act of 1972, Pub. Resources Code, former §§ 27000–27650]; *Surfrider Foundation v. California Coastal Com.* (1994) 26 Cal.App.4th 151, 158 [reviewing the California Coastal Plan recommendations and policies when assessing the scope of Coastal Act provisions].) The Coastal Plan recommended Policy 70 — resembling eventual section 30253 — "[b]luff and cliff developments shall be permitted if design and setback are adequate to assure stability and structural integrity *for the expected economic lifespan of the development* and if the development (including storm runoff, foot traffic, grading, irrigation, and septic tanks) will neither create nor contribute significantly to erosional problems or geologic instability of the site or surrounding area." (Cal. Coastal Zone Conservation Com., Cal. Coastal Plan, *supra*, at p. 89, italics added.) "Bluff protection works," as noted in Policy 70, "may be permitted only in accordance with Policy 19.[4] With that exception, no new

---

[4] Policy 19 contains language similar to current section 30235: "such construction that alters natural shoreline processes shall be permitted only when designed to eliminate or mitigate adverse impacts on shoreline sand systems and when required," as relevant here, "to protect principal structures of *existing developments* that are in danger from present erosion where the coastal agency determines that the public interest would be better served by protecting the existing structures than in protecting natural shoreline processes." (Cal. Coastal Zone Conservation Com., Cal. Coastal Plan, *supra*, at pp. 44–45, italics added.)

13

lot shall be created or new structure built that would increase the need for bluff protection works." (Cal. Coastal Zone Conservation Com., Cal. Coastal Plan, at p. 89.)

Second, interpreting "existing structures" to mean "existing at the time of the seawall application" would circumvent section 30235's restrictions on constructing shoreline devices. Amici curiae California Building Industry Association and California Business Properties Association readily admit a "new development" would become an "existing structure" once construction is complete under Casa Mira's interpretation. Coastal landowners could build a structure and then file a separate permit application for a seawall under section 30235. A newly constructed building would be guaranteed shoreline armoring immediately upon completion if it is in danger of erosion. (§§ 30253, subd. (b), 30235.) The Commission would be *required* to grant an applicant a coastal development permit to construct a seawall for *any* built structure in those circumstances, regardless of when the structure was built. Such an interpretation gives no independent meaning to the term "existing," rendering it surplusage. (*Los Angeles Unified School Dist. v. Superior Court* (2023) 14 Cal.5th 758, 781–782.) It further fails to comport with the Coastal Act's predominant goal of "preservation of the fragile coastal ecology from overzealous encroachment." (*Save Oxnard Shores v. California Coastal Com.* (1986) 179 Cal.App.3d 140, 152; see also § 30001.5, subds. (a), (f).)

Indeed, section 30235's legislative history strongly suggests the Legislature considered but rejected this expansive interpretation. Early versions of Senate Bill No. 1277 (1975–1976 Reg. Sess.) — the bill ultimately enacting the Coastal Act — did not limit the construction of revetments, seawalls, and other construction altering the natural shoreline to "existing structures." (Legis. Counsel's Dig., Assem. Amends. to Sen. Bill No. 1277

14

(1975–1976 Reg. Sess.) Stats. 1976, ch. 1330, § 1, June 18, 1976, p. 21; Legis. Counsel's Dig., Assem. Amends. to Sen. Bill No. 1277 (1975–1976 Reg. Sess.) June 24, 1976, p. 20; *Switzer v. Wood* (2019) 35 Cal.App.5th 116, 131 [examining early versions of bill for issues of statutory interpretation].) Rather, section 30204 (later renumbered 30235) provided, in relevant part, "such construction that alters natural shoreline processes shall be permitted when required to serve coastal-dependent uses or to protect structures, developments, beaches, or cliffs in danger from erosion. . . ." (Legis. Counsel's Dig., Assem. Amends. to Sen. Bill No. 1277 (1975–1976 Reg. Sess.) June 18, 1976, p. 21; Legis. Counsel's Dig., Assem. Amends. to Sen. Bill No. 1277 (1975–1976 Reg. Sess.) June 24, 1976, p. 20.) That broad language would have entitled *any* structure, development, beach or cliff in danger of erosion to a seawall.

But the Legislature ultimately narrowed the type of structures guaranteed seawall protection. In addition to striking from section 30235 "developments" and "cliffs," the final version of Senate Bill No. 1277 inserted the word "existing" before "structures." (Legis. Counsel's Dig., Assem. Amends. to Sen. Bill No. 1277, Stats. 1976 (1975–1976 Reg. Sess.) Aug. 12, 1976, pp. 1, 19.) If the Legislature intended to guarantee any structure shoreline protection — regardless of when it was constructed — it could have retained the broad language "shall be permitted when required . . . to protect structures. . . ." By incorporating "existing structures" into the enacted legislation, it declined to do so. Interpreting "existing structures" as structures existing prior to the effective date of the Coastal Act gives the term "existing" full force and effect. (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1048 ["[i]t is axiomatic that in assessing the import of a statute, we must

15

concern ourselves with the Legislature's purpose at the time of the enactment"].)

That the Legislature considered but failed to pass legislation expressly defining, among other things, "existing structure" in section 30235 as structures existing as of the effective date of the Coastal Act, does not alter this conclusion. (Legis. Counsel's Dig., Assem. Amends. to Assem. Bill No. 1129 (2017–2018 Reg. Sess.) April 26, 2017, p. 3; Legis. Counsel's Dig., Sen. Amends. to Assem. Bill No. 2943 (2001–2002 Reg. Sess.) Aug. 26, 2002.) Unadopted statutory amendments have little evidentiary value regarding legislative intent. (*West Coast University, Inc. v. Board of Registered Nursing* (2022) 82 Cal.App.5th 624, 641.) The amendments "may have failed because the Legislature felt it unnecessary to accomplish the result intended" or "for any of the multitude of reasons other than consideration on the merits that exist for the failure of measures to pass." (*Burgess v. Board of Education* (1974) 41 Cal.App.3d 571, 581.) "We will not speculate, as there is too little in the record to confidently resolve the question." (*West Coast University*, at p. 641.)

Citing section 30614 — the Commission shall "take appropriate steps to ensure that coastal development permit conditions existing as of January 1, 2002, relating to affordable housing are enforced" — Casa Mira argues the Legislature knew how to express its intent to temporally limit "existing structures," but failed to do so in section 30235. (§ 30614, subd. (a).) True, "where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes." (*People v. Norwood* (1972) 26 Cal.App.3d 148, 156.) But that interpretative principle is inapplicable here. Section 30614 —

16

located in the chapter addressing development controls and governing the Commission's responsibility to ensure coastal development permit conditions for affordable housing are enforced and do not expire during the term of the permit — addresses a subject unrelated to section 30235 — construction altering the natural shoreline, located in the chapter for coastal resources planning for the marine environment.

The Commission's prior coastal development permit decisions interpreting "existing structures" in section 30235 to mean "existing at the time of the seawall application" also do not impact our analysis. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8 [agency interpretation of a statute, "[d]epending on the context, . . . may be helpful, enlightening, even convincing. It may sometimes be of little worth"].) The administrative record reflects the Commission's interpretation has been inconsistent[5] — its " 'vacillating position . . . is entitled to no deference.' " (*Yamaha*, at p. 13.) We also fail to see how the Commission's past practice of mandating coastside builders affirmatively waive all rights to request fortifications in the future under section 30235 to obtain a coastal development permit impacts our independent assessment of the statutory

---

[5] The Commission asserts the trial court abused its discretion by denying its request for judicial notice of several prior determinations on shoreline armoring coastal development permit applications that included the Commission's interpretation of section 30235. We agree. (*Hubbard v. California Coastal Com*. (2019) 38 Cal.App.5th 119, 137, fn. 9 [granting request for judicial notice on appeal in writ of administrative mandate to set aside Commission's decision on a coastal development application]; Evid. Code, § 452, subd. (c) [authorizing judicial notice of official acts of state executive departments].) The documents were relevant to assessing whether the Commission's interpretation of section 30235 was entitled to any deference, and denial of the request was an abuse of discretion. (*CREED-21 v. City of San Diego* (2015) 234 Cal.App.4th 488, 520 [abuse of discretion standard of review of request for judicial notice ruling].)

text. (*Yamaha*, at pp. 8, 13 [" 'The standard for judicial review of agency interpretation of law is the *independent judgment* of the court, giving *deference* to the determination of the agency *appropriate* to the circumstances of the agency action' "].)[6]

In sum, the phrase "existing structures" in section 30235 refers to structures that existed prior to January 1, 1977, the Coastal Act's effective date. The condominiums and the sewer line, constructed in 1984, are not existing structures and are not entitled to shoreline armoring.

## II.

The Commission contends substantial evidence supports its finding that armoring was unnecessary to protect the Coastal Trail, a coastal-dependent use. (*City of San Diego v. California Coastal Com.*, *supra*, 119 Cal.App.3d at p. 232.) The record, according to the Commission, reflects that rerouting the Coastal Trail inland into a residential neighborhood was a less environmentally damaging feasible alternative to shoreline armoring. Accordingly, the trial court erroneously concluded the Commission abused its discretion by only approving the construction of a 50-foot seawall to protect the apartments. After reviewing the Commission's decision, examining "the

---

[6] At oral argument, respondent's counsel argued a settled expectation regarding an entitlement to shoreline armoring could arise from the Commission's prior interpretation of "existing structures" in section 30235. But the sole reference to this "argument" in Casa Mira's brief is a conclusory statement — unsupported by any legal authority or citation to the record — that "Casa Mira and its members have serious reliance interests in the [Commission's] previous, 38-year interpretation of the statute." Consequently, we do not consider this argument. (*New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098 ["[n]ew issues cannot generally be raised for the first time in oral argument"]; *Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316, fn. 7 [" 'Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived' "].)

whole record and consider[ing] all relevant evidence, including that evidence which detracts" from the Commission's decision, we disagree. (*Ocean Harbor House Homeowners Assn. v. California Coastal Com.* (2008) 163 Cal.App.4th 215, 227.)

As relevant here, construction of a seawall "shall be permitted when required to serve coastal-dependent uses" and "when designed to eliminate or mitigate adverse impacts on local shoreline sand supply." (§ 30235.) According to the Commission, the use of the word "required" indicates armoring is only permitted if it is the only feasible alternative capable of protecting the structure — "capable of being accomplished in a successful manner within a reasonable period of time, taking into account economic, environmental, social, and technological factors." (§ 30108.)

There is no dispute the Coastal Trail is a coastal-dependent use — any "use which requires a site on, or adjacent to, the sea to be able to function at all." (§ 30101.) Consistent with those requirements, the Commission staff recommended realigning the Coastal Trail *slightly* inward, roughly parallel to the shoreline, and approving the construction of a 257-foot seawall.[7] The seawall would occupy much less public beach space than the emergency riprap revetment currently installed, would minimize significant adverse impacts to coastal resources, and could be built to minimize encroachment onto the public beach.

Commission staff noted that shoreline protective structures can have a variety of negative impacts on coastal resources including adverse effects on sand supply and shoreline and beach dynamics, including the loss of sandy

---

[7] That seawall, according to staff, would also protect the apartments until they are redeveloped, are no longer present, or no longer require armoring.

beach. But after evaluating the necessity of proposed armoring to protect the Coastal Trail, staff concluded "there is no viable location for the Coastal Trail to be rerouted in this location while maintaining its aesthetic and recreational value adjacent to the ocean and beach." *Rerouting* the trail, staff noted, would require "loop[ing] inland of existing residential structures, such as the Casa Mira condominiums." The narrow space between the coastal bluff and the condominiums required relocating the Coastal Trail farther east of the condominium complex, thus sacrificing coastal views and a consistent shoreline path for pedestrians. (§ 30251; *McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 943 ["in determining whether to grant a coastal development permit, the Commission must consider and protect scenic and visual resources"].) Accordingly, the staff concluded relocation was not feasible and recommended certain measures to mitigate adverse effects of the seawall, such as constructing a new beach access stairway, dedicating a portion of the private blufftop land for public access to facilitate access to the stairway, opening an additional beach area for public recreation, and providing ongoing maintenance of these public access areas.

The Commission rejected its staff's recommendation; a revised staff report thereafter determined the Coastal Trail could be relocated by connecting it from the south and extending it inland of the condominiums on the Department of Parks and Recreation (Department) property. This, the Commission explained, provided pedestrians a contiguous path in "close enough proximity to the coast" while avoiding impacts to coastal resources from constructing a seawall. Accordingly, it approved a coastal development permit for the northernmost 50 feet of the proposed seawall — the length of seawall the Commission deemed necessary to protect the apartments — rather than the 257-foot seawall.

20

The Commission may disagree with its staff's proposed recommendation, necessitating staff to revise its report with findings to reflect the Commission's actions. (Cal. Code Regs., tit. 14, § 13090, subds. (b), (d); *Ocean Harbor House Homeowners Assn. v. California Coastal Com.*, *supra*, 163 Cal.App.4th at p. 225, fn. 6.) But the revised staff report does not include "an ample factual basis and explanation for the Commission's decision to reject the staff recommendation." (*Ocean Harbor*, at p. 245.) As Casa Mira notes, the Commission's revised staff report baldly stated that relocating the Coastal Trail avoids impacts to coastal resources and provides a path "close enough" to the coast. But the original staff report found rerouting was problematic due to the additional costs and permitting time necessary for moving the Coastal Trail. (Compare with *ibid.* [original staff report contained detailed explanation of three valuation methods for calculation of a mitigation fee providing Commission a factual basis for adopting a different methodology for assessing mitigation].) An engineering firm similarly noted the Department actually approved of the 257-foot seawall because it protected the trail. (§ 31408, subd. (a) [requiring consultation with the Department to coordinate the development of the Coastal Trail].) In the absence of any seawall, the Department must apply for a separate coastal development permit to realign the trail as well as seek new easements on the private, coastal bluff property. The firm determined both were uncertain and likely costly endeavors. Indeed, there are no estimates regarding the time the Department would require to relocate the trail. The firm also opined that removing the emergency riprap would result in the trail's imminent danger from the next major storm. Even the revised staff report expressly concedes relocation may be problematic given that Coastal Trail infrastructure would be immediately threatened without any

21

armoring present. On this record, it was not reasonable to conclude that relocating the Coastal Trail could be accomplished "in a successful manner within a reasonable period of time," considering the economic and environmental factors. (§ 30108.)

The Commission disputes this conclusion, mischaracterizing the record. First, it argues a Casa Mira homeowner conceded rerouting the Coastal Trail was a viable alternative to shoreline armoring. But the homeowner merely acknowledged Surfrider Foundation, an entity that opposed shoreline armoring, recommended rerouting the Coastal Trail through residential buildings. Indeed, the homeowner emphasized this alternative would eliminate coastal views. Second, the Commission suggests the Department supports relocation since it did not seek armoring here and intends to realign the Coastal Trail in the future. The record reflects the Department noted its agreement with a *slight* realignment of the Coastal Trail above Half Moon Bay State Beach, not rerouting the trail inland throughout residences, as the Commission contends. In that realignment, the Coastal Trail would remain seaward of the condominiums rather than weaving throughout the residences due to the long term threat to the Coastal Trail. Third, conclusory statements by the Surfrider Foundation — noting "less environmentally damaging alternatives have to be fully evaluated" and it "is entirely feasible to reroute the Coastal Trail around buildings as needed moving forward and as sea level rise progresses" — and a statement by the Commission's counsel — clarifying the commissioners' motion to revise final plans eliminating seawall protection for the Coastal Trail — do not constitute substantial evidence to support the Commission's findings. (*Lincoln Place Tenants Assn. v. City of Los Angeles* (2005) 130 Cal.App.4th 1491, 1502.)

22

Thus, we conclude Casa Mira has overcome the presumption that the Commission's determination is correct by identifying evidence to the contrary. (*Smith v. Regents of University of California*, *supra*, 58 Cal.App.3d at pp. 404–405.)

## DISPOSITION

The judgment granting the petition for writ of mandate is reversed as to its interpretation of "existing structures" in Public Resources Code section 30235. The judgment is affirmed as to the trial court's determination that there is no substantial evidence supporting the Commission's finding that armoring was unnecessary to protect the Coastal Trail. The parties are to bear their own costs of appeal.

_____
RODRÍGUEZ, J.


WE CONCUR:


_____
FUJISAKI, Acting P. J.


_____
PETROU, J.


A168645; *Casa Mira Homeowners Assoc. v. California Coastal Com.*

24

San Mateo County Superior Court, Hon. Marie S. Weiner.

Rob Bonta, Attorney General, Elizabeth S. St. John, Acting Assistant Attorney General, Daniel A. Olivas, Assistant Attorney General, David G. Alderson and Joel S. Jacobs, Deputy Attorneys General, for Defendant and Appellant California Coastal Commission.

Environmental Law Clinic, Mills Legal Clinic at Stanford Law School, Deborah A. Sivas and Amanda Zerbe for Surfrider Foundation as Amicus Curiae on behalf of Defendant and Appellant California Coastal Commission.

Law Offices of Thomas D. Roth and Thomas D. Roth, for Plaintiff and Respondent Casa Mira Homeowners Association.

Hanson Bridgett, Nathan A. Metcalf, Sean G. Herman and Ellis F. Raskin for Bay Area Council and Bay Planning Coalition, as Amici Curiae on behalf of Plaintiff and Respondent Casa Mira Homeowners Association.

Cox, Castle & Nicholson, Stanley W. Lamport and Morgan L. Gallagher for California Building Industry Association and California Business Properties Association, as Amici Curiae on behalf of Plaintiff and Respondent Casa Mira Homeowners Association.

Nossaman, Steven H. Kaufmann for Capistrano Bay District, Gary Grossman, Pajaro Dunes Association, Pajaro Dunes North Association, Coastal Property Owners Association of Santa Cruz County, and Smart Coast California; Devaney Pate Morris & Cameron and Leslie E. Devaney for City of Del Mar; Rutan & Tucker, A. Patrick Munoz for City of Dana Point; Seren Legal, Katrina Kasey Corbit for Alliance for Coastal Marin Villages, as Amici Curiae on behalf of Plaintiff and Respondent Casa Mira Homeowners Association.

G10 Law, Louis A. Galuppo and Daniel T. Watts for Beach Cities Preservation Alliance, as Amicus Curiae on behalf of Plaintiff and Respondent Casa Mira Homeowners Association.